573 So.2d 77 (1990)
David Anthony WILSON, Appellant,
v.
STATE of Florida, Appellee.
No. 89-02885.
District Court of Appeal of Florida, Second District.
December 28, 1990.
James Marion Moorman, Public Defender, and Megan Olson, Assistant Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Erica M. Raffel, Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Acting Chief Judge.
Appellant, David Anthony Wilson, argues on this appeal from his convictions and sentences for three counts of burglary, two counts of grand theft and one count of petit theft that the trial court should have suppressed his confessions to those offenses because the confessions were involuntary and were obtained in violation of his right to counsel. We disagree and affirm.
On December 29, 1989, appellant was arrested by Detective Benavidez of the *78 Polk County Sheriff's Office for the December 27, 1988 burglary and petit theft of a Circle K store on Tennessee Lane in Auburndale. He invoked his right to counsel and was released that same day on his own recognizance. No attorney was provided and appellant did not consult an attorney after he was released.
Two days later, on New Year's Eve, December 31, 1989, Detective Holland received a call from appellant's parents about a motorcycle that appellant had left in their yard. Since appellant's parents knew that appellant did not own a motorcycle, they asked the sheriff's department to check the tag number. The sheriff's department confirmed that the motorcycle was stolen.
Detective Holland and Deputy Borum went to appellant's parents' home, impounded the motorcycle and sent a uniformed officer to take appellant from the hospital, where he had gone for injuries he received in a motorcycle accident the previous day, December 30, 1989, to the Polk County jail concerning the motorcycle theft.
Detective Holland and Deputy Borum met appellant and the uniformed officer at the Polk County jail at about midnight, or very early New Year's Day 1989, and read appellant his Miranda rights from a rights card. Appellant indicated that he understood his rights and would talk to them.
Both officers testified that although they could smell alcohol on appellant, it was not very strong and appellant was coherent and alert. Detective Holland testified, "[H]e was talking just like I'm talking to you. He was very coherent and very alert." Appellant's parents, however, testified that appellant had been on drugs and alcohol when he had gone to the hospital earlier that day, and was "wiped out."
Appellant testified that he was in "pretty bad shape" New Year's Eve as a result of taking crack cocaine, crystal methedrine and alcohol and that when the officers were talking to him at the jail, he really only wanted to go back to sleep. He testified that he had three bruised or cracked ribs and had skinned up his back in the motorcycle accident.
When the officers were questioning appellant at the jail, the only crime they were aware of was appellant's theft of the motorcycle. They were not aware of any Circle K burglaries. During questioning, appellant confessed not only to the motorcycle theft, but to the burglary of a Circle K store on Thornhill Road in Auburndale and to the burglary of the Circle K store on Tennessee Lane in Auburndale, the offense for which he had been arrested three days earlier, on December 29, 1989, and for which he had invoked his right to counsel.
Detective Holland testified that the subject of the other burglaries came up when "we were more or less talking back and forth," and appellant stated that he had a bad crack problem. Detective Holland then asked appellant how many times he had done this and appellant confessed to the Thornhill Road Circle K burglary. Detective Holland then asked him, "Have you done any other crimes that I should know about?" and appellant confessed to breaking into the Circle K on Tennessee Lane in Auburndale.
At trial, appellant moved to suppress all three confessions. He argued that his December 29, 1989 invocation of the right to counsel continued to operate in regard to the three confessions on January 1, 1990, precluding their admission at trial. At the least, he argued that his invocation of counsel applied to the confession regarding the Circle K burglary on Tennessee Lane that he had been arrested for and invoked counsel on on December 29, 1989. He also argued that, in any event, his January 1, 1990 confessions were involuntary because of his intoxication and injuries. The trial court denied the motions, finding that appellant's December 29, 1989 invocation of the right to counsel did not continue to operate on January 1, 1990 because, after invoking his right to counsel while in custody for the Tennessee Lane offense, appellant was released and did not seek counsel. Then, while under arrest three days later for another offense, after being Mirandized again, appellant simply exercised his right to talk about the Tennessee Lane offense. The court also found that *79 appellant's parents' observations were not the observations of experts and that appellant's desire to go back to sleep could not be considered the equivalent of incompetency in view of the fact that appellant knew he had been taken into custody by law enforcement, knew he was in the jail annex, knew he was being interviewed by law enforcement and knew he had been given Miranda rights. We agree.
Appellant argues that under two United States Supreme Court cases, Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), his confessions were not admissible. In Edwards, the Supreme Court held that a suspect who has "expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-485, 101 S.Ct. at 1880, 68 L.Ed.2d at 378. In Roberson, the Supreme Court held that the Edwards rule also bars police-initiated interrogation concerning a different offense or investigation following a request for counsel.
These cases, however, do not involve the precise facts before us. The defendant in both Edwards and Roberson had been held in continuous custody from the time of the first interrogation through the second interrogation. Appellant here was released from custody after he invoked his right to counsel at the time of his initial arrest. He was not in continuous custody and the officers involved in his subsequent custody were not aware of the previous custody or charges. We find these facts to be determinative.
Edwards emphasized that it was error to reinterrogate "an accused in custody." 451 U.S. at 485, 101 S.Ct. at 1885, 68 L.Ed.2d at 383 (emphasis added). The Supreme Court later observed that Edwards was intended as a prophylactic rule, "to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in Edwards was." Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405, 411 (1983) (emphasis added). Edwards then was intended to prohibit the authorities from badgering or overreaching that "might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." Smith v. Illinois, 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488, 495 (1984). We find that none of the evils Edwards sought to avoid are present in the instant case.[1]
The defendant here was released from custody following his request for counsel on one offense, and was arrested three days later for a different offense by officers who knew nothing about the first offense or request for counsel. Under such circumstances, the inherent pressures of continuous custodial interrogation are not present. The two interrogations are simply too attenuated. It is significant that the officers here were acting in good faith. Under these circumstances, appellant's release from custody destroyed the presumption that any questioning following a custodial request for counsel is invalid. We conclude that the trial court was correct in finding that appellant had exercised his right to talk. The court did not err in admitting all three confessions into evidence.
Appellant next maintains that even if the admission of his confessions did not violate his right to counsel, the confessions were involuntary and were inadmissible on that basis. Our review of the record leads us to conclude that appellant's intoxication did not render his confession involuntary. See Thomas v. State, 456 So.2d 454 (Fla. 1984). Here, as in Thomas, the detectives who questioned the defendant testified that he appeared coherent and alert, that they advised him of his rights, that he intelligently waived those rights and that he voluntarily gave the statements. Neither *80 did appellant's injuries appear to render him incoherent or unable to communicate with the officers. We, therefore, conclude that the confessions were voluntarily given and that all three confessions were properly admitted into evidence.
For these reasons, we affirm the trial court judgment denying appellant's motions to suppress the confessions.
HALL and PARKER, JJ., concur.
NOTES
[1] We note parenthetically that we do not believe that the recently released, Minnick v. Mississippi, ___ U.S. ___, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) applies to the instant case.